CAMILLE G. BIRCH, Claimant-Appellee, v. MALVERN COLD
STORAGE COMPANY, Defendant-Appellant.

No. 45481.

MAY 6, 1941.

Woodford R. Byington, for Claimant-Appellee.

Cook & Cook, for Defendant-Appellant.

STIGER, J.—Decedent, Ralph Birch, transported and sold products of defendant by truck on a regular route. On July 24, 1938, on his return trip, Birch was traveling south on the west side of a graveled highway. There was a ridge of gravel about twelve inches high and twelve inches wide made by a road scraper on the west side of the highway and about two feet from a ditch on the west side of the highway about two feet deep and ten feet wide. When Birch was a mile and a half south of Treynor his left rear tire went flat. After the tire was repaired and he had driven south a quarter of a mile his right front wheel entered and traveled in the ridge of gravel for about 20 feet. The truck then traveled from 30 to 40 feet with the right wheels between the ridge of gravel and the ditch and then went into the ditch where the car overturned and crushed Mr. Birch who died before he could be removed from under the car.

The accident happened about 6:20 P. M. The material parts of sections 1376 and 1453, 1939 Code read:

"1376 Wilful injury—intoxication. No compensation under this chapter shall be allowed for an injury caused:

"2. When intoxication of the employee was the proximate cause of the injury."

"1453 Decision on appeal. Any order or decision of the industrial commissioner may be modified, reversed, or set aside on one or more of the following grounds and on no other:

"4. If there is not sufficient competent evidence in the record to warrant the making of the order or decision."

The defense to the claim is that Birch was intoxicated and his intoxication was the proximate cause of the injury.

The industrial commissioner found that the evidence was not sufficient to show that the injury sustained by the deceased was due to intoxication and that the injury was "due to an inadvertence of the right front truck wheel coming in contact with a row of loose material along the right hand side of the roadway which pulled the truck westward into the ditch."

The issue is whether the evidence supports the finding of the commissioner.

Plaintiff's claim is based on circumstantial evidence referring principally to the condition of the road and the tire tracks. We will refer briefly to plaintiff's evidence:

Birch had driven on the west side of the highway and along the east side of the ridge for 60 or 70 feet when the right front wheel "caught" or "hooked" the ridge and traveled therein for about 10 or 15 feet. The right wheels of the truck then traveled for about 20 to 40 feet between the ridge and the ditch and then went into the ditch.

One witness testified:

"I saw the tire tracks. It seemed that one wheel caught the ridge and went over the rocky side, and then made a straight run for 30 or 40 feet. It seemed like the right wheel caught far enough down in the ditch to pull the other wheel on the rock, and then in the ditch, and then the car turned over. The track that I followed was on the east side of the mound of rock on the west side of the road. The ridge of gravel was made by the grader, and was about two feet from the west bank of the road. Where the tire caught the gravel I could see the track plain. I could follow the track next to the ditch because the wheel ran pretty close to the ridge along the edge of the ditch. Evidently the right front wheel went into the ridge of the gravel, and followed the gravel ridge down twenty or thirty feet about straight. The right wheel went in the gravel about six or eight or ten feet. Then it cut across the gravel and in that two foot space, then it went down the two foot space between the ridge of the gravel and the west edge of the road 30 or 40 feet, with left wheel on the west side of the gravel, to where the left wheel went over the rock. The ridge of gravel is about one foot and a half wide. The tire track showed the right wheel going catercornered for six or eight feet across the gravel and then the tracks showed the car going 30 or 40 feet straddling the gravel ridge to where the left front wheel went through the gravel."

The steering apparatus was loose, and, as a witness for defendant stated, ''the play in the wheel was not too safe for driving.''

The injury arose out of the employment and claimant is entitled to an award unless defendant has established its defense that intoxication was the proximate cause of the injury. On this issue, the defendant's evidence is substantially as follows:

About 12:30 on the afternoon of the day of the accident Birch had a pint or quart bottle of whiskey one-half full in a customer's store in the town of Neola. Birch took one drink about 1:00 or 1:30 in this store. Three other persons in the store drank from the bottle. Birch left the store about 2:00 o'clock. The customer saw Birch on the streets of Neola about 4:30 and testified that he was not intoxicated when in his store or when he saw him on the street and that his speech and actions were normal.

A dentist of Neola testified that Birch saw him in a pool hall about 2:00 and asked him to take out some teeth and whether he could take a drink before having them extracted. The doctor stated that he could take one drink. Birch then left the pool hall and later returned, played pool with the doctor and at 3:00 P. M. had five teeth extracted. The doctor testified he left his office at 4:00 o'clock; that he was not intoxicated at any time; that he observed him during the afternoon and that he appeared to be normal. So far as shown by the record, Birch took one drink of whiskey in Neola. He reached the town of McClelland at 5:00 o'clock P. M. where he had a small glass of whiskey.

A witness observed Birch driving his Chevrolet panel truck south on the graveled highway at 5:30 P. M. about one and one-half miles north of Treynor and about 3 miles north of the place of the accident. He testified that the road was rough and uneven; that the car was traveling from 60 to 65 miles per hour and that it was bouncing and jumping over the road and weaving.

When Birch had traveled south of Treynor about a mile and a half his left rear tire went flat. Henry Kohl, a mechanic, changed the tire for Birch. He testified on direct examination:

"Q. How did he talk?

"A. Well, he didn't seem to want to talk very much.

"Q. Well, did he talk like a drunken man would talk, thick?

"A. Yes, he did.

"I didn't notice him walking any; he was leaning against the truck, and, of course, I was busy with my work. I didn't notice that he staggered, but he walked around on the west side and sat down on the running board. He started to take the tire off from the panel. I couldn't get it off. He could not be of any assistance to me. I asked him what was the matter, and he said he wasn't feeling well. I thought he was intoxicated. He appeared to me as if he were sick, and told me he had had some teeth taken out, but he didn't complain that they were bothering him. The thickening of the speech could have been from his having teeth pulled. My thought that he was intoxicated was based upon the way he talked and the way he acted. He didn't seem to want to talk to me or anything, and kind of walked away from me. The average man is inclined to talk.

"I didn't smell any liquor. He didn't seem to stagger. He was back against the truck. When he walked around from the running board, around back of the truck, he seemed to walk natural.

"I put the spare tire onto his truck, and put the punctured tire inside. I noticed him drive off, and he drove normal when he left there. He got into the cab, I gave him a cigarette and lit the cigarette for him in the truck. I was about two feet from him. I struck the match and held it up to his cigarette, and didn't smell any liquor at that time. I imagine I saw him go south about 300 feet."

The witness then testified his opinion that Birch was intoxicated was based solely on the facts that he talked a little thick and acted like he didn't want to talk with him.

Claimant offered the following testimony in rebuttal on the issue of intoxication:

Mr. Baxter, a salesman, saw Birch in the town of McClelland about 5:00 o'clock in the evening and visited with him. He testified:

"His face was altered a little bit, and he told me he had some teeth out, his front teeth, that morning. Naturally his talk was a little different. He talked a little thick. I didn't smell any liquor on him. I didn't see anything outside of his speech unusual about his demeanor. I saw him get out of his truck and walk over to the street, and he walked normal. He said his teeth were bothering him, and I don't think he was talking quite so free for that reason. I would say that he looked like he hadn't had anything to drink that day."

Albert Mayer, age 14, and Russell Mayer, age 12, attempted to aid Birch in fixing his tire. The jack that Birch had in his car would not work. Albert then phoned Mr. Kohl, the mechanic, to come out to the truck and fix the tire. They both testified they didn't smell liquor on Birch and that he talked in a normal manner.

All of the above evidence was introduced at the hearing before the deputy commissioner. Defendant gave notice that it would introduce additional testimony at the hearing before the commissioner. Pursuant to this notice, Albert and Russell Mayer, who had testified for claimant at the hearing before the deputy commissioner and Chester Mayer, father of the boys, testified for the defendant on the issue of intoxication of Birch. The testimony of Albert and Russell Mayer before the industrial commissioner was in direct contradiction to the testimony at the prior hearing. They testified that they smelled liquor on the breath of Birch at the time they were trying to help him fix the tire; that "when he tried to walk he would walk close to the side of the truck and hang on it so he could have something to balance himself so he wouldn't fall down, stagger all over the road, something like that," and that in their opinion he was intoxicated. The reasons given by the boys for repudiating their testimony before the deputy commissioner are inconsistent, contradictory and unsatisfactory.

Chester Mayer observed Birch at the truck when it was parked because of the flat tire from a distance of 60 to 80 feet. He concluded Birch was intoxicated because "he started back along side of the truck and he kept one hand leaning on the truck and he walked unsteady like a person that was dizzy or didn't have very good control of himself. He wasn't steady on his feet. Just like a person who had to have a little support to get along."

Albert and Russell Mayer stated, among other reasons for changing their testimony, that their father told them not to state Birch was intoxicated because it would get some of the neighbors in trouble. Chester Mayer gave the following reason for advising his sons "to forget it all."

"Q. To what do you refer and mean when you said you told your son Albert to forget it?

"A. Just so he wouldn't be even thinking about liquor or anything of that kind at all. I don't like for them to be around it and I don't want them to be if I can keep them from it.

"Q. That was your only reason for mentioning that to Albert at that time?

"A. That is right."

The commissioner, after reviewing the testimony of Albert and Russell Mayer, at both hearings, and the circumstances and evidence bearing on their credibility, stated in his opinion:

"We are, therefore, compelled to conclude that their testimony relating to intoxication is not worthy of belief for or against the proposition of intoxication."

The record is that Birch had a drink of whiskey about 1:30 in the afternoon out of the bottle and a small drink of whiskey at 5:00 o'clock. Several witnesses stated that he was not intoxicated at 5:00 o'clock. Mr. Kohl, a witness for defendant, stated that after he fixed the tire he watched Birch drive south for about 300 feet and "he drove normal when he left there." The truck went into the ditch about a thousand feet beyond the place Kohl saw Birch driving in a normal manner.

In Serrano v. Cudahy Packing Co., 194 Iowa 689, 691, 190 N. W. 132, 133, the opinion states:

"Evidence offered before the industrial commissioner is subject to the usual tests of credibility and this is true although no witness contradicts. The finding of the commissioner has the same force and effect as the finding of a jury. * * *. A jury takes into consideration the means and the opportunity of a witness to know the facts to which his testimony relates. This is also the privilege of the commissioner and it is for him to determine the consistency of the testimony and in the light of all proven facts and circumstances to weigh the credibilty thereof."

Birch was driving his truck in the course of his employment and the circumstantial evidence relied upon by claimant reasonably tends to support the decision of the commissioner, who, in passing on the weight of the evidence, found that the injury was caused by the accidental contact of the wheels of the truck with the loose gravel. The commissioner also found, in substance, that the judgment and faculties of Birch and his ability to drive the truck with care were not impaired by intoxicating liquor, and that defendant had failed to establish the intoxication of Birch as the proximate cause of the injury.

The following language in Young v. Mississippi R. P. Co., 191 Iowa 650, 652, 180 N. W. 986, is applicable to this case:

"While there is testimony in the record tending to show that the deceased had drunk intoxicants to some extent on the day of his death, it falls far short of that measure of proof which would justify a finding that he was drunk, or incapable of attending to his usual duties in a reasonably careful and efficient manner."

The evidence warrants the finding that Birch was not intoxicated.

We are of the opinion there is sufficient evidence to sustain the decision of the commissioner and the case is affirmed.— Affirmed.

HALE, C. J., and SAGER, GARFIELD, OLIVER, MILLER, WENNERSTRUM, and MITCHELL, JJ., concur.